IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIGUEL MARISCAL, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 11-CV-148-WDS |
| ) | No. 07-CR-30182-WDS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Petitioner Miguel Mariscal, Jr. is currently serving a 20-year prison sentence for conspiracy to distribute and possession with intent to distribute more than five grams of cocaine and more than 1,000 kilograms of marijuana. His appeal was dismissed, although the court of appeals declined to rule on whether petitioner's attorney provided ineffective assistance of counsel in the negotiation of the appeal waiver in the plea agreement. *See United States v. Mariscal*, 365 Fed. App'x 16, 17 (7th Cir. 2010). That issue is now before the Court in petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The government has responded (Doc. 9), and petitioner has replied (Doc. 12).

### BACKGROUND

Randall Baker and Tilden Crase were arrested driving a semi through Madison County, Illinois, with 144 kilograms of cocaine. They informed investigators that petitioner, Miguel Mariscal, Jr., was responsible for coordinating the shipment. Agents from the U.S. Drug Enforcement Agency then arranged a meeting in which Baker secretly recorded

petitioner discussing the seized cocaine shipment and telling Baker he would need to deliver two additional drug shipments to make up for the one that was seized. Law-enforcement officers executed a search warrant of petitioner's home that same day. They found a loaded semi-automatic pistol and 24 grams of cocaine in his bedroom.

Petitioner was indicted for conspiracy to distribute cocaine and marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and for possession with intent to distribute cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). He pleaded guilty to both counts.

In his plea agreement, he and the government agreed that petitioner's relevant conduct included about 144 kilograms of cocaine and 1,800 kilograms of marijuana. He would have an initial guidelines offense level of 38, and a criminal-history category of II. The government recommended a reduction for affirmative acceptance of responsibility for his criminal conduct, resulting in an offense level of 35 and an advisory sentencing-guidelines range of 188 to 235 months. The government, however, had also filed an information under 21 U.S.C. § 851 to establish a prior felony conviction, which gave petitioner a mandatory minimum sentence of 240 months.

In exchange for petitioner's continued cooperation under the terms of the plea agreement, the government agreed not to file a second § 851 information about another prior felony. The second information would have subjected petitioner to a mandatory life sentence in prison.

After petitioner's plea was entered, the U.S. Probation Office issued its presentence-investigation report. The report concluded that petitioner's offense level was 38, but that it should be reduced to 35 for acceptance of responsibility. However, the report also assessed a two-level increase for possession of a weapon during the offense, based on the pistol found in petitioner's bedroom, and a three-level increase for petitioner's role in the offense, finding that he was a manager or supervisor of an organization that involved five or more participants. Thus, petitioner's offense level increased from 35 to 40. The report

also found that petitioner had a criminal-history category of III. These computations resulted in a sentencing-guidelines range of 360 months to life.

Petitioner's attorney, John Stobbs, filed motions opposing the report's recommendations, to withdraw petitioner's guilty plea, and to withdraw as attorney.[1] The Court held a hearing on the motions. It granted Stobbs's motion to withdraw as attorney, but took the others under advisement. Petitioner was appointed a new attorney, Ronald Jenkins. Jenkins eventually asked the Court to leave petitioner's guilty plea in place, i.e., to withdraw the motion to withdraw the guilty plea.

At petitioner's sentencing, the government recommended a downward departure of 120 months, under U.S.S.G. § 5K1.1, based on petitioner's complete cooperation and substantial asistance throughout the investigation and prosecution. The Court granted the departure and sentenced petitioner to 240 months' imprisonment, on each of counts 1 and 2, to run concurrently.

Petitioner appealed. *See United States v. Mariscal*, 365 Fed. App'x 16 (7th Cir. 2010). Among other things, he argued that his plea was not knowing and voluntary. The court of appeals rejected that claim, however, because petitioner was advised of his rights during the plea colloquy (and the only potential error was harmless). *Id.* at *16–17. His other claims were barred by the appeal waiver in petitioner's plea agreement. *Id.* at *17. Finally, the court noted that petitioner's claim of ineffective assistance of counsel in the negotiation of his appeal waiver would best be raised on collateral review. *Id.*

Petitioner now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, primarily alleging ineffective assistance of counsel. He claims (1) Stobbs misled him and did not research the facts of his case when calculating petitioner's sentencing-guidelines range; (2) the government breached the plea agreement by not filing a motion under Federal Rule of Criminal Procedure 35; (3) Stobbs misinformed petitioner about the

---

[1] Petitioner was accusing Stobbs of tricking him into entering the guilty plea.

weapon enhancement and the amount of drugs that could be attributed to him; and (4) Jenkins failed to research the case and consider going to trial.[2]

## DISCUSSION

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack" may move the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Relief under § 2255 is "reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 633–34 (1993)).

To establish a claim of ineffective assistance of counsel under the Sixth Amendment, a petitioner must show (1) that "counsel's performance fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington.* 466 U.S. 688, 688, 694 (1984). The court may evaluate either element (performance or prejudice) first and, if it finds one unsupported, need not consider the other. *Strickland*, 466 U.S. at 697. Because counsel is presumed to be effective, the petitioner bears a heavy burden to establish ineffective assistance of counsel. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006); *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995).

---

[2] Petitioner originally raised a fifth claim that his attorneys should have appealed the Court's denial of his motion to suppress. However, in his reply brief, petitioner withdraws that claim (Doc. 12, p. 10).

4

ANALYSIS

*Breach of the plea agreement*

In ground two of his motion, petitioner alleges that the government breached the plea agreement by not filing a Rule 35 motion on his behalf. Based on his extensive cooperation, petitioner believes the government was required to file the motion. A claim that the government breached a promise to file a Rule 35 motion does satisfy the jurisdictional requirements of § 2255. *Bischel v. United States*, 32 F.3d 259, 264 (7th Cir. 1994). There was no breach here, however. Under the terms of the plea agreement, it was within the government's discretion whether to file any motion for a reduction in petitioner's sentence. The agreement says "the Government *may*, in the *sole discretion* of the United States Attorney, file *either* a motion under § 5K1.1 … *or* a motion under Rule 35" (emphasis added) (Doc. 68, § II, ¶ 11, Case No. 07-CR-30182). The Court reads that sentence as giving the government discretion whether to file any motion at all, in addition to discretion to choose which motion to file—it only says the government *may* file one or the other motion, not that it *will*. But, in case it is unclear, the agreement also says "the Government has no obligation to file a motion for reduction of sentence" (*id.*). Given that the terms of the agreement left the government with discretion whether to file a Rule 35 motion, there was no breach. *See United States v. Burrell*, 963 F.2d 976, 985 (7th Cir. 1992) (finding no breach of plea agreement where the government had agreed to move for a departure "in its sole discretion" if the defendant "provides substantial assistance").

*Ineffective assistance of counsel: Negotiation of the plea agreement*

Petitioner's grounds one and three address related issues of ineffective assistance of counsel in the negotiation of petitioner's plea agreement. Petitioner claims that his attorney John Stobbs induced him to plead guilty by promising a sentence reduction far below 240 months, even as little as five years or probation, if petitioner continued cooperating with

5

the government.[3] In addition, petitioner claims that Stobbs failed to research the relevant facts when calculating petitioner's potential sentence. He claims he was expecting a guidelines range from 188 to 235 months. Instead he received a range of 360 months to life, based on a longer criminal history and enhancements for possession of a weapon and his role in the offense. He claims he was not informed about the possibility of an increase for possession of a weapon (particularly when the weapon was found in his bedroom closet, hundreds of miles from where his criminal conduct occurred). Not only did that increase his sentence, he says, it disqualified him from participating in a drug-abuse program that itself could have led to another reduction in his sentence. He believes he was further misinformed because Stobbs told him he would only be responsible for the drug amounts stipulated to in his plea agreement, yet the Court found him responsible for substantially more drugs. (He also believes Stobbs should have disputed the drug amounts.)

Based on the inducement and misinformation given to him by Stobbs, petitioner contends that his plea was unknowing and involuntary. Were it not for counsel's inducement and bad advice, he says, he would not have "spilled his guts" to the government, and would have insisted on going to trial.

The government responds that petitioner is unable to establish constitutionally deficient performance. Any mistakes Stobbs made in anticipating petitioner's guidelines range did not amount to constitutionally deficient performance, because even a gross mischaracterization of the sentencing consequences of a plea is not, by itself, proof of deficiency. *See Bethel v. United States*, 458 F3d 711, 717 (7th Cir. 2006). Rather, under the case law of this circuit, petitioner must show that Stobbs did not attempt to learn the facts of the case and that he failed to make a good-faith estimate of the likely sentence. *See id.*

The government refutes petitioner's allegations with an affidavit from Stobbs. Stobbs says he discussed the sentencing guidelines with petitioner and how they applied to

---

[3] Petitioner writes that Stobbs led him to believe he was actually facing 15 years, which could have been lowered to as little as five years "or possibly probation" if the government filed a § 5K1.1 motion.

his case. Stobbs says they specifically discussed relevant conduct and other enhancements, including petitioner's role in the offense (as a leader/organizer) and possession of a weapon. Stobbs also says they discussed the plea agreement. He believes petitioner fully understood it, including that the Court could sentence him to anything within the statutory maximum, including life.

The government also argues that petitioner does not present evidence showing that Stobbs did not make a good-faith effort in advising him of the relevant facts and legal principles. Stobbs was correct in his application of the legal principles, the government says, since he correctly informed petitioner that he faced a 20-year minimum sentence and that his offense level, due to the quantity of drugs involved, was 38. Finally, the government concludes, Stobbs's calculations produced the same anticipated guidelines range as the government's, so they were not gross mischaracterizations.

The Court would first clarify that petitioner cannot claim he was *induced* to plead guilty by an alleged promise, by Stobbs or anyone, to obtain a sentence below 240 months. If petitioner was given promises of that kind, then his plea was not voluntary. *See* Fed. R. Crim. P. 11(b)(2) ("Before accepting a plea of guilty … the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from … promises (other than promises in a plea agreement)."). But the court of appeals has already held that it was. *See Mariscal*, 365 Fed. App'x at 16–17. This Court cannot reconsider that issue. Moreover, at petitioner's change of plea, the undersigned district judge read the terms of the plea agreement, including that there was a mandatory minimum sentence of 240 months. Petitioner swore under oath that no one, including his attorney, had made any other statement in an attempt to induce him to plead guilty (Doc. 9, Ex. A, p. 10). He cannot now simply contradict the assurances he gave the Court in that hearing. *See, e.g., United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005).

The heart of petitioner's claim here is ineffective assistance of counsel in the negotiation of the plea agreement. (The court of appeals refrained from ruling on that issue. *See Mariscal*, 365 Fed. App'x at 17.) Petitioner's claim is that Stobbs did not research the relevant facts when calculating petitioner's guidelines range, and that Stobbs did not inform petitioner about the possibility of increases based on the enhancements.

To challenge a guilty plea based on ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that the petitioner was prejudiced, meaning there is a reasonable probability that, but for counsel's errors, the petitioner would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Morales v. Boatwright*, 580 F.3d 653, 659 (7th Cir. 2009); *Bethel*, 458 F.3d at 716. Regarding counsel's performance, it can be "extraordinarily difficult" to predict the sentencing consequences of a guilty plea. *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996); *see also McMann v. Richardson*, 397 U.S. 59, 769 (1970) (noting that the decision to plead guilty "frequently involves the making of difficult judgments"). Accordingly, before allowing a client to plead guilty, reasonably competent counsel will attempt to learn all the relevant facts of the case, estimate a likely sentence, and communicate the results of his analysis to the client. *Barnes*, 83 F.3d at 939. When a court attempts to evaluate performance, "[t]he salient question is whether counsel undertook a good-faith effort to determine the applicable facts and estimate the sentence. An inaccurate prediction of a sentence alone is not enough to meet the standard." *Bethel*, 458 F.3d at 717; *accord Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000); *Barnes*, 83 F.3d at 940 ("A gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance, but it is not proof of a deficiency."). It is a "stringent standard." *United States v. Cieslowski*, 410 F.3d 353, 358 (7th Cir. 2005) (reviewing cases).

Here, petitioner says Stobbs did not research the relevant facts and, in addition, did not inform him about the possibility of a longer sentence based on enhancements and a longer criminal history. He further claims he was misled about the amount of drugs he would be held responsible for. However, the drug amounts did not impact his sentence; even with the additional drug amounts included, petitioner's plea agreement and the presentence report both calculated a base offense level of 38.

Stobbs attests that he specifically discussed the enhancements with petitioner, though he does not mention his efforts to calculate petitioner's criminal history. Petitioner denies that Stobbs discussed the enhancements with him; he says it was not until after the presentence report was issued that they came up. So there is a factual dispute about what petitioner was informed.

The Court finds that it would be difficult to resolve the matter of Stobbs's performance without holding an evidentiary hearing. The difference between the anticipated guidelines range in the plea agreement (or the statutory minimum of 240 months) and the guidelines range in the presentence report could be interpreted as a gross mischaracterization, since it resulted in a 10-year increase in petitioner's minimum sentence. To be sure, the government came to the same conclusion as Stobbs, but that is not entirely persuasive, since there were three different errors. The Court finds that without a hearing it cannot determine whether Stobbs undertook a good-faith effort to determine the applicable facts and estimate the sentence. *See Bethel*, 458 F.3d at 717 ("Because the district court declined to hold a hearing, the record is wholly undeveloped on the issue of the efforts that Bethel's lawyer undertook to estimate Bethel's sentence before recommending that Bethel plead guilty."); *Barnes*, 83 F.3d at 940 ("Nothing in the trial record proves that Mr. Barnes' counsel did *not* undertake a good faith investigation earlier. With our study confined to the trial record, we cannot find either deficient performance or prejudice."); *see also Jakolski v. Daniels*, 427 F.3d 456, 461 (7th Cir. 2005) ("Courts cannot ascertain intent or good faith

9

without hearings … ."); *Sandoval v. United States*, 574 F.3d 847, 851 (7th Cir. 2009) (noting that ineffective-assistance-of-counsel claims "often require evidentiary hearings because they allege facts that the record does not show"). And, apart from good-faith effort, reasonably competent counsel must communicate the results of his analysis to his client. *See Barnes*, 83 F.3d at 939. Petitioner and Stobbs dispute whether Stobbs did that. A hearing would allow the Court to resolve that dispute.

Nonetheless, the Court finds that petitioner cannot show he was prejudiced even if Stobbs's performance was constitutionally deficient. *See United States v. Banks*, 405 F.3d 559, 568 (7th Cir. 2005) (finding it easier to dispose of an ineffective-assistance-of-counsel claim based on a lack of prejudice) (citing *Strickland*, 466 U.S. at 697). To demonstrate prejudice in this context, a petitioner "must show that his lawyer's deficiency was a 'decisive factor in [his] decision to plead guilty.'" *Martinez*, 169 F.3d at 1053 (quoting *Barnes*, 83 F.3d at 940); *accord Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). That showing requires more than the simple allegation that he would have insisted on going to trial. *Cieslowski*, 410 F.3d at 359. He must produce objective evidence that a reasonable probability exists that he would have gone to trial. *Id.* Such evidence may include the nature of the misinformation provided by his lawyer and the history of the plea negotiations. *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010); *Julian*, 495 F.3d at 499.

Here, petitioner offers only the simple allegation that he would have insisted on going to trial. He does not offer evidence that a reasonable probability exists that he would have gone to trial, so his claim fails. Not only does he not meet that burden, the facts are aligned against him.

First, the correct guidelines range was 360 months to life, with the possibility of a reduction if the government were to file a § 5K1.1 or Rule 35 motion. The government did in fact file a § 5K1.1 motion, which resulted in a substantial reduction in petitioner's sentence to 240 months. Had he opted to go to trial, he would not have received that reduc-

tion. Second, petitioner had little chance of prevailing at trial. The government says petitioner provided a substantial amount of incriminating information, though it does not give details. In any event, Baker and Crase informed investigators that petitioner was responsible for coordinating the cocaine shipment in their truck, and D.E.A. agents recorded petitioner directing Baker to deliver two new drug shipments. Third, and most importantly, the government was prepared to file a second § 851 information that would have resulted in a mandatory life sentence. It is not rational to think petitioner would have gone to trial and risked a life sentence *if only* he had he known his minimum sentence was 360 months instead of 240 months. *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[T]o obtain relief … a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

Petitioner also cannot show prejudice because he swore under oath at his change-of-plea hearing that he was not relying on the anticipated guidelines range in his plea agreement. He knew he faced a mandatory minimum of 240 months and a maximum of life in prison. He acknowledged that, on further review, his criminal-history category could increase or decrease. He affirmed that the anticipated guidelines range in the plea agreement was "just the best effort of [his] attorney," and ultimately the Court would determine the guidelines range. He understood that the Court could not determine the guidelines range until after a presentence report was prepared (Doc. 9, Ex. A, pp. 6, 10–12). Such statements, made under oath during the plea colloquy, are entitled to a "presumption of verity" and are binding. *United States v. Martinez,* 169 F.3d 1049, 1054 (7th Cir. 1999) (internal quotations omitted); *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *United States v. Stewart*, 198 F.3d 984, 986 (7th Cir. 1999). Since those statements are binding, petitioner cannot show that Stobbs's miscalculation of the guidelines range, and alleged failure to inform petitioner about the possibility of

enhancements, were a decisive factor in his decision to plead guilty. Petitioner was not prejudiced. *See Bethel*, 459 F.3d at 718 (finding the petitioner could not establish prejudice because the district court had informed him "six or seven different ways that he could not rely on any particular predictions or discussions about a possible sentence when he entered his plea"); *Bridgeman*, 229 F.3d at 592; *Martinez*, 169 F.3d at 1054.

*Ineffective assistance of counsel: Failure to consider trial*

In ground four, petitioner says the attorney who replaced Stobbs, Ronald Jenkins, rendered ineffective assistance by not considering the possibility of going to trial, not researching the facts and the law, and not explaining the advantages of a jury trial.[4] Petitioner says Jenkins warned him that if he went to trial, he would be found guilty and receive a 30-year sentence. Petitioner believes they could have raised defenses, including constitutional arguments. For instance, he says, the weapon and drug enhancements would have to have been included in the indictment, and they could have argued against the government's § 851 information.

Petitioner's arguments here are mistaken for several reasons. Petitioner had already pleaded guilty and waived his right to trial; the plea was binding and there was no reason to withdraw it. So it was not a question of whether to proceed to trial or not. The warning Jenkins allegedly gave petitioner was actually less dire than it should have been; as discussed earlier, petitioner would have received a life sentence had he gone to trial and been convicted, not just 30 years. With a life sentence, of course, the weapon and other enhancements would not have applied, so he could not have raised defenses against them. As to any other defenses and constitutional arguments, petitioner bears a heavy burden to show that Jenkins was ineffective. *See, e.g.*, *Trevino*, 60 F.3d at 338. He "must identify the

---

[4] Petitioner begins by saying Stobbs's ineffective assistance *caused* Jenkins to render ineffective assistance. However, the Court believes the substance of petitioner's claim is that Jenkins did not research the case and sufficiently consider the possibility of going to trial. In any case, the Court has found that Stobbs's actions did not prejudice petitioner's defense.

specific act or omissions of counsel that are alleged not to have been the result of reasonable professional judgement." *Strickland*, 466 U.S. at 690. The vague suggestion that Jenkins could have raised defenses and constitutional arguments is not a specific act or omission. Thus, petitioner does not show that Jenkins's performance was deficient. Nor does petitioner make any showing of prejudice. He does not offer any evidence that, but for Jenkins's alleged errors, there is a reasonable probability that the result of his sentencing, or any other proceeding, would have been different.

In his reply brief, petitioner says he did not receive Jenkins's affidavit. He asks the Court to send him a copy so that he can respond. A response would not make a difference in the outcome of petitioner's claim, however, because the Court did not use the affidavit. Petitioner's arguments themselves were mistaken, and without merit. The Court will nevertheless direct the Clerk to send a copy of the affidavit to petitioner so that he has a complete record of this case.

The Court finds that petitioner's motion and the files and records in this case conclusively show that he is not entitled to relief. An evidentiary hearing will not be held. *See* 28 U.S.C. § 2255(b); *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006).

### CERTIFICATE OF APPEALABILITY

Following a 28 U.S.C. § 2255 proceeding, a petitioner cannot appeal unless a circuit court or district court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue only when the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). This means reasonable jurists could debate whether the petitioner's motion should have been resolved in a different manner. *Id.* at 484; *Tennard v. Dretke*, 542 U.S. 274, 288 (2004). The Court does not believe reasonable jurists would debate whether the government breached petitioner's plea agreement, or whether Stobbs or

Jenkins provided ineffective assistance of counsel. Therefore, petitioner does not make a substantial showing of a denial of a constitutional right. A certificate of appealability will not be issued.

## CONCLUSION

Petitioner's motion to vacate, set aside, or correct his sentence (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. A certificate of appealability will **NOT** be issued. The Clerk of Court is **DIRECTED** to send petitioner a copy of the government's Exhibit D (Doc. 9, Ex. 4) with a copy of this order. The Clerk is further **DIRECTED** to enter judgment in favor of respondent United States of America and against petitioner Miguel Mariscal, Jr.

**IT IS SO ORDERED.**

**DATED: October 23, 2013**

                                                                /s/ **WILLIAM D. STIEHL**
                                                                    **DISTRICT JUDGE**